## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL RENNIE | : | |
| 30 Sean Lane | : | Civil Action - Law |
| Glenmoore, PA 19343 | : | |
| Plaintiff | : | |
| | : | |
| v. | : | No. |
| | : | |
| NEXDINE HOSPITALITY GROUP | : | |
| 905B South Main Street | : | |
| Suite 203 | : | |
| Mansfield, MA 02048 | : | |
| | : | |
| and | : | |
| | : | |
| NEXDINE LLC | : | |
| 905B South Main Street | : | |
| Suite 203 | : | |
| Mansfield, MA 02048 | : | |
| Defendants | : | |

### CIVIL ACTION COMPLAINT

AND NOW, COMES the Plaintiff, Paul Rennie, by and through his counsel, John J. Stanzione, Esq. of Lamb McErlane, P.C. and files this Complaint in the above-referenced action alleging the following:

### INTRODUCTION

1.     Plaintiff has initiated this action to redress violations by the Defendants named above of the Age Discrimination in Employment Act ("ADEA" – 29 U.S.C. §§621 *et. seq.*) and the Pennsylvania Human Relations Act ("PHRA").   As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

1

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 because it arises under the laws of the United Stated and seeks redress for violations of federal laws.   This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367(a) because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims and are so related to the ADEA claim that the state law claims form part of the same case or controversy asserted herein.

3.      This Court may properly assert personal jurisdiction over the Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4.      Pursuant to 28 U.S.C. § 1931(b) and (c), venue is properly laid within this district because Plaintiff lives within the boundaries of the Eastern District of Pennsylvania, the incidents in question occurred within the Eastern District of Pennsylvania, and Defendants are deemed to reside where it is subject to personal jurisdiction, rendering Defendants a resident of the Eastern District of Pennsylvania.

5.      Plaintiff is proceeding herein (in part) under the ADEA after properly exhausting all administrative remedies with respect to such claims.   Plaintiff filed a timely Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC")

with a request that the charge be dual filed with the Equal Employment Opportunity Commission ("EEOC").   Plaintiff has received a notice of right to sue from the EEOC.

## PARTIES

6.     The Plaintiff, Paul Rennie, is a Caucasian male residing at 30 Sean Lane, Glenmoore, PA 19343.   The Complainant is 57 years old having been born on July 10, 1964.

7.     The Defendant, NexDine Hospitality Group, is a foreign corporation doing business within the Commonwealth of Pennsylvania with headquarters at 905B South Main Street, Suite 203, Mansfield, MA 02048.

8.     The Defendant, NexDine LLC, is a foreign corporation doing business within the Commonwealth of Pennsylvania with headquarters at 905B South Main Street, Suite 203, Mansfield, MA 02048.

9.     It is believed, and therefore averred, that at all relevant times herein, NexDine LLC was the parent corporation of, or the affiliate corporation of, NexDine Hospitality Group.

## FACTUAL AND LEGAL AVERMENTS

10.    At all times relevant hereto, the Defendants employed 20 or more employees.

11.    At all times relevant hereto, Plaintiff was employed by Defendants.

12.    Plaintiff was hired by Defendants in June, 2019 as the Regional Vice-President of Business Development.

13.    At time of hire, Defendants agreed to compensate Plaintiff with a base salary plus commissions for sales made by Plaintiff of Defendants' products to Defendants' customers.

14.    Plaintiff had an exemplary work record with the Defendants and made extraordinary efforts to sell Defendants' products.

15.    Plaintiff was never advised by Defendants that his work performance was not satisfactory.

16.    Plaintiff was never disciplined by Defendants for any reason including for non-performance or unsatisfactory performance.

17.    While employed by Defendants, Plaintiff was assigned a specific territory to sell Defendants' products and was tasked with developing and locating customers within that territory to whom Defendants' products could be sold.

18.    While employed by Defendants, Plaintiff identified various customers within his assigned territory, solicited interest for Defendants' products and services from such customers and submitted proposals to such customers.

19.    By letter dated March 19, 2020, Plaintiff was advised that due to Defendants' lack of business, Plaintiff was being furloughed effective March 20, 2020.

20.    Within the letter of March 19, 2020, the Defendants referenced the unprecedented times and situation created by the COVID-19 pandemic.

21.    Within the letter of March 19, 2020, the Defendants noted that Plaintiff was a "key employee" of the Defendants.

4

22.     Within the letter of March 19, 2020, the Defendants noted that the Defendants expected the furlough to be temporary and expected business to be back to "full capacity shortly".

23.     Plaintiff was advised by the Defendants that the lack of business that necessitated his furlough in March 2020 was due to the COVID-19 pandemic.

24.     While on furlough, Plaintiff continued to perform services on behalf of Defendants including soliciting customers, submitting proposals and attending meetings with prospective customers and representatives of Defendants.

25.     While on furlough, Plaintiff did not receive his base salary or receive any compensation from the Defendants.

26.     The furlough of Plaintiff which began March 20, 2020 ended and Plaintiff returned to work for the Defendants.

27.     By letter dated June 22, 2020, Plaintiff was again advised by Defendants that Plaintiff was being furloughed due to an alleged lack of business.

28.     Within the letter of June 22, 2020, Defendants specifically stated that the Defendants expected to be back to "full capacity shortly" and expected Plaintiff's furlough to be temporary.

29.     The Defendants stated within the June 22, 2020 letter that Plaintiff was a "key employee" of the Defendants.

30.     The Defendants stated within the June 22, 2020 letter that Defendants wanted Plaintiff "to be able to begin working immediately when requested".

31.     The Defendants stated within the June 22, 2020 letter that in "recognition of [Plaintiff's] contributions to the organization", the Defendants were modifying Plaintiff's original commission structure so as to increase the percentage of Plaintiff's commission on new business closed between June 22, 2020 and December 31, 2020.

32.     While on this second furlough, Plaintiff continued to perform services on behalf of Defendants including soliciting customers, submitting proposals and attending meetings with prospective customers and representatives of Defendants.

33.     While on this second furlough, Plaintiff did not receive his base salary from the Defendants.

34.     In April, 2021, Plaintiff, while still on furlough from his job as Regional Vice-President of Business Development, entered into an agreement with Defendants to address compensation to Plaintiff for certain accounts and customers for whom Plaintiff performed services prior to his second furlough.   The Agreement was reduced to writing (herein "Consulting Agreement") and addressed Plaintiff's compensation with respect to four (4) specific customer prospects identified within the Consulting Agreement.

35.     The Consulting Agreement was for the limited purpose of defining Plaintiff's compensation from Defendants for four (4) specific accounts noted within that agreement for which proposals had been submitted and which were pending at the time that the Consulting Agreement was signed..

36.     At the time Plaintiff signed the Consulting Agreement, Plaintiff expected to return to work with the Defendants as Regional Vice-President of Business Development at the conclusion of the second furlough period.

37.     While the Consulting Agreement was in effect, Plaintiff continued to perform services on behalf of Defendants for prospective customers other than the four (4) identified within the Consulting Agreement including soliciting such other prospective customers, submitting proposals to such other prospective customers and attending meetings with such other prospective customers and representatives of Defendants.

38.     In August 2021, after one (1) year of being on furlough, Plaintiff inquired of David Cheswick an employee and representative of the Defendants whether Plaintiff was terminated.   Mr. Cheswick assured Plaintiff that Plaintiff was not terminated but remained on furlough.

39.     During Plaintiff's conversation with David Cheswick, Plaintiff was assured that Plaintiff would be returning to work with Defendants as Regional Vice-President of Business Development at the conclusion of the furlough period.

40.     On or about late August 2021 or early September 2021, Plaintiff learned that the Defendants had hired a new employee, Justin Drew, as Regional Vice-President of Business Development.

41.     Justin Drew was tasked with performing the same duties for which Plaintiff was hired and which Plaintiff was performing for the Defendants.

42.     Justin Drew was assigned the same sales and business territory previously assigned to the Plaintiff.

43.     Justin Drew was assigned to develop and service within the territory noted above the same customers developed and serviced by the Plaintiff.

44.     Justin Drew is younger than the Plaintiff.

45.     It is believed, and therefore averred, that Justin Drew is younger than forty (40) years old..

46.     Plaintiff was terminated from his employment as Regional Vice-President of Business Development with the Defendants.

47.     Plaintiff believes that he was terminated from his employment as Regional Vice-President of Business Development by Defendants because of Plaintiff's age, i.e. 57 years old.

48.     Plaintiff believes, and therefore avers, that Defendants have no intention of returning the Plaintiff to the position of the Regional Vice-President of Business Development.

49.     Plaintiff believes, and therefore avers, that Defendants have no intention of returning the Plaintiff to a position of employment with the Defendants that would provide the Plaintiff with the same wages, compensation, benefits and responsibility that Plaintiff had while employed by the Defendants.

50.     Plaintiff avers that Defendants' termination of Plaintiff's employment as Regional Vice-President of Business Development constitutes age discrimination in violation of state and federal laws.

51.     Defendants' failure to return Plaintiff to employment as Regional Vice-President of Business Development constitutes additional and continuing discrimination against the Plaintiff because of Plaintiff's age in violation of state and federal laws.

52.     Plaintiff avers that Defendants' failure to employ Plaintiff in a position similar to Plaintiff's position as Regional Vice-President of Business Development with similar responsibilities and similar compensation constitutes additional and continuing discrimination against the Plaintiff because of his age in violation of state and federal law.

53.     As a result of Defendants' discriminatory conduct, Plaintiff has suffered and will continue to suffer damages and harm including loss of back wages, future wages and other employment benefits.

54.     Plaintiff avers that as a result of Defendants' discriminatory conduct, Plaintiff has suffered and will continue to suffer embarrassment, inconvenience, humiliation and other damages for which Plaintiff is entitled to compensation.

55.     Plaintiff avers that Defendants' discriminatory conduct was willful and wanton entitling the Plaintiff to liquidated damages.

### COUNT I
### PLAINTIFF v. DEFENDANTS
### VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYEMNT ACT, AS AMENDED

56.     The foregoing paragraphs are incorporated herein as if set forth in full.

57.     At the time of the discriminatory conduct alleged herein, Plaintiff was over the age of forty (40) years old having been born on July 10, 1964.

58.     Defendants' conduct as alleged herein was in direct violation of the provisions of the Age Discrimination in Employment Act.

59.     Defendants' conduct as alleged herein was willful and wanton.

60.     Defendants' conduct resulted in the harm to Plaintiff as outlined herein.

WHEREFORE, Plaintiff requests judgment in favor of the Plaintiff and against the Defendants.   Plaintiff further requests that the Court enter an award granting Plaintiff back pay.   Plaintiff also request that the Court enter an award granting Plaintiff's reinstatement to Plaintiff's position with Defendants with continuation of all job benefits, or in the alternative, that the Court award front pay and compensation for loss of job benefits. Plaintiff also requests liquidated damages as allowed by law.   Plaintiff also requests reimbursement of attorney's fees, costs and expenses of this litigation, pre-judgment and post-judgement interest and such further relief as the Court deems just, necessary and appropriate.

## COUNT II
## PLAINTIFF v. DEFENDANTS
## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT ("PHRA")

61.     The foregoing paragraphs are incorporated herein as if set forth in full.

62.     Plaintiff avers that Defendants' conduct as alleged within this Complaint constitutes violations of the Pennsylvania Human Relations Act which prohibits an employer from discriminating against an employee because of that employee's age.

63.     Defendants' conduct as alleged herein was willful and wanton.

64.     Defendants' conduct resulted in the harm to Plaintiff as outlined herein

WHEREFORE, Plaintiff requests judgment in favor of the Plaintiff and against the Defendants.   Plaintiff further requests that the Court enter an award granting Plaintiff back pay.   Plaintiff requests that the Court enter an award granting Plaintiff reinstatement to Plaintiff's position with the Defendants with continuation of all job benefits, compensatory damages and other compensation allowed by law.   In the event reinstatement is not granted, Plaintiff requests an award of front pay and compensation for future loss of employment benefits.   Plaintiff also requests reimbursement of attorney's fees, costs and expenses of this litigation, pre-judgment and post-judgment interest and such further relief as the Court deems just, necessary and appropriate.

Respectfully submitted,
**LAMB McERLANE PC**

Dated:   December 2, 2022        By:

John J. Stanzione, Esq.
Katie LaDow, Esq.
PA Attorney I.D. Nos. 41175/321590
24 E. Market Street
West Chester, PA 19381
*jstanzione@lambmcerlane.com*
*kladow@lambmcerlane.com*
610-430-8000